John DOE, Plaintiff,

v.

Catherine C. MCVEY, et
al. Defendants.

No. Civ.A.01–3639.

United States District Court,
E.D. Pennsylvania.

Aug. 9, 2005.

John J. Kerrigan, Jr., Langhorne, PA, Witold J. Walczak, Pittsburgh, PA, Paula Kay Knudsen, Harrisburg, PA, for Plaintiff.

Sue Ann Unger, Office of the Attorney General, Philadelphia, PA, for Defendants.

## OPINION

POLLAK, District Judge.

An anonymous plaintiff, hereinafter referred to as "John Doe," brings this action pursuant to 42 U.S.C. § 1983, seeking declaratory and injunctive relief with respect to Pennsylvania's Registration of Sexual Offenders Act ("Megan's Law"), 42 Pa. Cons.Stat. §§ 9791 *et seq.* Pennsylvania's Megan's Law (like the generally similar Megan's Laws enacted in all other states in the last eleven years) requires all convicted sex offenders to register with state and local police and subjects certain sex offenders to community notification whereby police alert the communities in which the offenders reside or work to their presence. The general validity of Pennsylvania's Megan's Law has been sustained over various constitutional challenges. *See Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962 (2003); *Commonwealth v. Howe*, 842 A.2d 436 (Pa.Super.2004); *cf. A.A. ex rel. M.M. v. New Jersey*, 341 F.3d 206, 208 (3d. Cir.2003) (reviewing Third Circuit decisions sustaining the constitutionality of New Jersey's Megan's Law). The case at bar, however, addresses how these requirements apply in a rather particular circumstance involving a Pennsylvania resident who was convicted of a sexual offense in New Jersey but sought to return to his home state to serve his sentence. Under Pennsylvania's Megan's Law, any out-of-state sex offender who transfers his supervision to Pennsylvania is subject to community notification. In contrast, an individual convicted of the same offense in Pennsylvania would only be subject to community notification if, after a civil hearing, he had been designated as a "sexually violent predator" "due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." 42 Pa. Cons.Stat. § 9792 (defining "sexually violent predator").

Before this court are cross-motions for judgment on the pleadings, addressing whether this imposition of community notification violates Doe's constitutional right to equal protection and due process. Because this court finds that the disparate treatment of in-state and out-of-state sex offenders violates the Equal Protection Clause, Doe's motion will be granted.

I.

### A. John Doe

On August 1, 1999, John Doe, a Pennsylvania resident, was arrested for molesting an 11–year old girl in New Jersey. On July 24, 2000, he pled guilty to second degree sexual assault and was sentenced to five years probation and parole supervision for life. *See* Ex. D3 at 3; N.J. Stat. Ann. § 2C:43–6.4. In the sentencing report, the presiding judge found that "[d]efendant's sexual deviation is not compulsive nor repetitive and it appears was the result of an intoxicated condition on the evening of the offense" and that Doe was "unlikely to commit another offense." Ex. D3. Ordinarily, under New Jersey's Me-

gan's Law, a person found guilty of such a sexual offense would then have had a civil hearing to determine whether the offender's likelihood of recidivism was sufficiently substantial as to warrant his being made a subject of community notification.[1] However, because Doe intended to return to Pennsylvania to serve his sentence, New Jersey did not hold a community notification hearing in his case. At sentencing, on October 27, 2000, Doe requested that his supervision be transferred to Pennsylvania in accordance with the Interstate Compact Concerning Parole and Probation ("the Compact"), Pa. Stat. Ann., tit. 61, § 321, to which both New Jersey and Pennsylvania were signatories.[2] Pursuant to the Compact, Doe signed an "Application for Compact Services and Agreement to Return," consenting to differences in probationary supervision in the two states. Doe was provisionally allowed to travel to Pennsylvania pending acceptance of his application to transfer his probation

Upon receiving Doe's application, the Pennsylvania Board of Probation and Parole ("the Board") held an equivalency hearing in which it determined that, had Doe been convicted in Pennsylvania, he would have been guilty of indecent assault. 18 Pa. Cons.Stat. § 3126(a)(7). Where the victim is under age thirteen, as in this case, indecent assault constitutes a misdemeanor in the first degree and is designated a "sexually violent offense." *See* 42 Pa. Cons.Stat. §§ 9792, 9795.1(a)(1). Had Doe been convicted of this crime in Pennsylvania, he would have been required to register with the state police and would have received a civil hearing, presided over by his sentencing judge, to determine whether, under Pennsylvania's Megan's Law, he was a "sexually violent predator" for whom community notification was warranted. In such a hearing, a Pennsylvania offender is afforded full due process rights including representation by an attorney, the right to cross-examination, and the right to call expert and lay witnesses. 42 Pa. Cons. Stat. § 9795.4(e)(2). The Commonwealth has the burden of proving by "clear and convincing evidence" that the offender is a "sexually violent predator." 42 Pa. Cons. Stat. § 9795.4(e)(3). However, because he is an out-of-state offender, Doe was not accorded such a hearing. Instead, without a determination that he was a "sexually violent predator," Doe was advised that he would be required to submit to community notification.

Doe registered with the Pennsylvania state police as a sex offender, but refused to consent to community notification without a hearing to determine whether he posed any danger to the community. As a result, in June 2001, the Pennsylvania Board of Probation and Parole denied

---

1. Pursuant to such a hearing, a New Jersey offender is ranked according to the risk that he will re-offend. An offender designated as tier-two (moderate risk) or tier-three (high risk) is subject to community notification. A tier-one (low risk) offender is neither subject to community notification nor included in New Jersey's Internet registry, but (like tier-two and tier-three offenders) he is required to register with New Jersey state police.

2. On June 19, 2002, the Interstate Compact for the Supervision of Parolees and Probationers was repealed and replaced by the Interstate Compact for the Supervision of Adult Offenders, which provides for the "controlled movement of adult parolees and probationers across state lines." 61 P.S. § 324; N.J. Stat. Ann. § 168–26. Both compacts were approved by Congress. *See* 4 U.S.C. § 112 ("The consent of Congress is hereby given to any two or more States to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies, and to establish such agencies, joint or otherwise, as they may deem desirable for making effective such agreements and compacts.").

Doe's application for transfer of probation and informed him that he had to leave the state. Doe filed an administrative appeal of that decision, and on July 20, 2001, without awaiting disposition of the administrative appeal, Doe filed this § 1983 action. The complaint alleges that, by treating in-state and out-of-state offenders differently, the Board, Board Chairman William F. Ward, and State Police Commissioner Paul Evanko violated his constitutional rights to equal protection and due process as well as his statutory rights under the Interstate Compact.[3] On July 23, 2001, the Board gave Doe permission to remain in Pennsylvania pending resolution of his administrative appeal and then stayed the appeal pending resolution of this action.

On November 15, 2001, defendants filed their first motion for judgment on the pleadings. This court denied that motion without prejudice and ordered the parties to submit cross-motions for summary judgment limited to the claim that community notification, as applied to Doe, violated the Interstate Compact. *Doe v. Pa. Bd. Of Prob. & Parole*, 2002 WL 31548998, 2002 U.S. Dist. Lexis 15067 (E.D.Pa. July 26, 2002). Following submission of those motions, this court granted defendants' motion for summary judgment, and invited the parties to re-file their motions for judgment on the pleadings on the constitutional claims in plaintiff's complaint. *Doe v. Pa. Bd. Of Prob. & Parole*, 2003 U.S. Dist. Lexis 6795 (E.D.Pa. Mar. 31, 2003). Those cross-motions for judgment on the pleadings or, in the alternative, summary judgment, on the constitutional claims, are currently before this court.

## B. Pennsylvania's Registration and Community Notification Requirements

Under Pennsylvania's Megan's Law, an out-of-state offender who is convicted of an offense that is equivalent to what Pennsylvania classifies as a "sexually violent offense" is required to comply with the registration and community notification provisions of the Act. *See* 42 Pa. Cons.Stat. § 9795.2(b), § 9798(e); 61 P.S. § 331.33(d)(3).[4] To comply with the Act's registration requirements, the offender must provide the Pennsylvania state police

---

3. On September 30, 2004, this court entered orders dismissing the Board, on Eleventh Amendment grounds, for lack of jurisdiction, and substituting Acting Board Chairman Benjamin A. Martinez for Chairman Ward and State Police Commissioner Jeffery B. Miller for Commissioner Evanko. By order of July 21, 2005, Board Chair Catherine C. McVey was substituted for former Acting Board Chairman Martinez.

4. On November 24, 2004, after this motion was fully briefed and argued, the General Assembly amended Megan's Law, effective January 24, 2005. Since that time, the court has not received any guidance from the parties regarding whether the amended statute will apply to Doe. However, the registration and community notification requirements, as they pertain to offenders in Doe's position, appear to remain unchanged, with one exception: whereas out-of-state offenders were previously excluded from the sex offender registry made available to the public on the Pennsylvania state police website, under the amended statute, these offenders are now included. Therefore, even assuming, *arguendo*, that the amended statute would apply to Doe, the amendments do not materially affect the court's equal protection analysis. The statutory requirements cited throughout the text of this opinion refer to the unamended statute. (The section numbers themselves were not affected by the amendments). Where pertinent, this opinion provides references to the amended statute in footnotes.

The registration and notification provisions as amended in November 2004 are summarized below. Under § 9795.2 ("Registration procedures and applicability"), out-of-state offenders are required to register for varying lengths of time depending on: (a) the offense committed and (b) the registration and community notification requirements that the offender was subject to in the jurisdiction where he was convicted, sentenced, or court

with information about all current or intended residences, employment, or enrollment. § 9795.2(a)-(b).[5] The state police, in turn, provide this information to the chief law enforcement officer in the municipality in which the offender resides, is employed, or is enrolled as a student. *See* 42 Pa. Cons.Stat. § 9795.2(c). The offender must also verify his residence with the state police and be photographed on an annual basis. § 9796(b).

martialed. Under the unamended statute, Doe would have to comply with registration and community notification requirements for ten years. Because New Jersey never held a hearing to classify Doe under that state's Megan's Law, the amended Pennsylvania statute would also require him to comply for ten years.

Section 9795.2(b) reads, in pertinent part: (b) Individuals convicted or sentenced by a court or adjudicated delinquent in jurisdictions outside this Commonwealth or sentenced by court martial.—...

(4) An individual who resides, is employed or is a student in this Commonwealth and who has been convicted of or sentenced by a court or court martialed for a sexually violent offense or a similar offense under the laws of the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico or a foreign nation, or who was required to register under a sexual offender statute in the jurisdiction where convicted, sentenced or court martialed, shall register at an approved registration site within ten days of the individual's arrival in this Commonwealth. The provisions of this subchapter shall apply to the individual as follows:....

(iii) Except as provided in subparagraphs (I), (ii), (iv) and (v), if the individual has been convicted or sentenced by a court or court martialed for an offense listed in section 9795.1(a) or an equivalent offense, the individual shall be, notwithstanding section 9792, considered an offender and subject to registration pursuant to this subchapter. The individual shall also be subject to the provisions of this section and sections 9796 [relating to residence verification] and 9798.1(c)(2) [relating to information

Under the law's community notification provisions, the state produces an "Out-Of-State Offender Community Notification Flier" for each offender, which reads:

\* \* \* OUT–OF–STATE
OFFENDER\* \* \*

COMMUNITY NOTIFICATION FLIER

This is to inform you that the below-listed individual has been designated for

made available on the Internet]. The individual shall be subject to this subchapter for a period of ten years or for a period of time equal to the time for which the individual was required to register in the other jurisdiction or required to register by reason of court martial, whichever is greater, less any credit due to the individual as a result of prior compliance with registration requirements.... 42 Pa. Cons.Stat. § 9795.2.

The amended community notification provision of § 9798 includes minor textual changes but remains substantively unchanged.

Under the original statute, out-of-state offenders were not posted on the Pennsylvania state police website. Under the amended statute, however, information on *all* sex offenders is available to the public through the Internet. *See* § 9798.1. For offenders not designated as sexually violent predators, the internet posting includes: (1) the offender's name and any aliases; (2) year of birth; (3) the city, county and zip code of all residences; (4) the city, county and zip code of any institution or location at which the person is enrolled as a student; (5) the city, county and zip code of any employment location; (6) a photograph of the offender, updated not less than annually; (7) a description of the offense or offenses committed; and (8) the date of the offense and conviction, if available. § 9798.1(c)(2). This information is to be posted on the Internet for the same period of time that the offender is required to register. § 9798.1(d)(3).

5. Under the amended statute, offenders are subject to fingerprinting and photographing as part of the routine registration requirements. *See* 42 Pa. Cons.Stat. § 9799.9, as amended November 24, 2004.

Community Notification by the Pennsylvania Board of Probation and Parole, as outlined in Title 42, Judiciary and Judicial Procedure, of the Pennsylvania Consolidated Statutes, Chapter 97, Subchapter H, Registration of Sexual Offenders:

## * * * COMMUNITY NOTIFICATION IS REQUIRED FOR THIS DESIGNATION* * *

The flier also contains the offender's name, current address, photograph, and the offense for which he was convicted. 42 Pa. Cons.Stat. § 9798(a). The flier does not, however, include the label "Sexually Violent Predator." *See* Ex. D10. The chief law enforcement officer in the municipality where the offender resides is responsible for distributing the flier to neighbors, local school officials, day care and pre-school programs, and anyone else with supervisory responsibility for children. *See* 42 Pa. Cons.Stat. § 9798(b). The information contained in the community notification flier is also available to members of the public upon request. 42 Pa. Cons.Stat. § 9798(d).[6] Individuals convicted of indecent assault in the first degree are required to comply with the registration and community notification requirements for ten years. 42 Pa. Cons.Stat. § 9795.1(a)(1).

## II.

"After the relevant pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss. Therefore, in reviewing the present motions, this court views the facts alleged in the pleadings, and the inferences to be drawn from those facts, in the light most favorable to the nonmoving party, and judgment should not be granted unless there is no material issue of fact to resolve, and the movant is entitled to judgment in the movant's favor as a matter of law. *Leamer v. Fauver*, 288 F.3d 532, 535 (3d. Cir.2002); *Constitution Bank v. DiMarco*, 815 F.Supp. 154, 156–57 (E.D.Pa.1993).

## III.

■ Defendants contend that, by applying to transfer his probation to Pennsylvania under the Interstate Compact, Doe consented to community notification, and therefore waived his right to challenge its constitutionality. As part of that application, Doe signed an agreement that read, in pertinent part:

I, [ ], hereby apply for supervision as a Probationer/Parolee pursuant to the Interstate Compact for the Supervision of Probationers/Parolees. I understand that the very fact that supervision will be in another state makes it likely that there will be certain differences between the supervision I would receive in New Jersey and the supervision which I will receive in any state which I am asking to go. However, I urge the authorities to whom this application is made, and all other judicial and administrative authorities, to recognize that supervision in another state, if granted as requested in this application, will be a benefit to me and will improve my opportunities to make a good adjustment. In order to get the advantages of supervision under the Interstate Compact for the Supervision of Probationers/Parolees, I do hereby accept such differences in the course and character of supervision as may be provided, and I do state that I consider

---

**6.** Under § 9798.1 of the amended statute, information about out-of-state offenders is to be posted on the state police website. *See supra* note 4.

the benefits of supervision under the Compact to be worth any adjustments in my situation which may be occasioned. *See* Ex. D4.

It is undisputed that Doe was not informed that he would be required to submit to community notification until several months after he applied for the transfer and signed this agreement.

■ "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). In *Doe v. Ward*, 124 F.Supp.2d 900, 916 (W.D.Pa. 2000), the court had occasion to consider whether an agreement couched in the same language as Doe's constituted a valid waiver of "the process accorded in-state offenders prior to community notification." In ruling that it did not, that court found:

> [The] transfer application is not sufficiently detailed to effectuate such a waiver. The proviso acknowledging an agreement to comply with the receiving

state's conditions of probation is written in general terms. There is no mention of mandatory submission to community notification.

*Id.* This court agrees. The application for transfer refers only to differences in the "supervision" Doe would receive in the two states. It does not make reference to community notification, Megan's Law, or the waiver of any constitutional rights.

## IV.

■ The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause does not require that all persons be treated alike, but rather that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).[7] "If a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classifi-

7. Defendants argue that out-of-state sex offenders are not similarly situated to in-state sex offenders. First, defendants assert that although out-of-state offenders must comply with the community notification procedures, they are not labeled "Sexually Violent Predators" and are not posted on the Pennsylvania state police website. *But see supra* note 4 (describing recent statutory amendments). Second, in-state offenders who have been designated as "sexually violent predators" are subjected to community notification for life, whereas notification of out-of-state offenders ends after ten years. *Id.* Third, out-of-state offenders are convicted based on different state laws, some of which may impose community notification without a hearing, or may confer different rights under that state's constitution. Fourth, out-of-state offenders have the option to remain in the state where they were sentenced to avoid Pennsylvania's community notification requirement. Fifth, due to the time and expense required, Pennsylva-

nia does not—and could not—provide sexually violent predator hearings for out-of-state offenders. Even if the state *could* hold such hearings, defendants further argue, the presiding judges would not have the same level of knowledge about the out-of-state offenders that they have about the in-state offenders, whom they are responsible for sentencing.

The first three asserted distinctions ignore the factor that is at the core of Doe's claim—that Pennsylvania would subject him to community notification without having made the predicate showing, obligatory had Doe been charged and convicted in Pennsylvania, that he is a "sexually violent predator." The fourth asserted distinction states, in effect, that Doe can avoid the potential harm of which he is complaining by abandoning his plan to return to Pennsylvania. The fifth asserted distinction is not a denial of similarity—it is, instead, a proffered explanation for why Pennsylvania treats similarly situated in-state and out-of-state offenders differently.

cation so long as it bears a rational relationship to some legitimate end." *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). But, "even in the ordinary equal protection case calling for the most deferential standards, we insist on knowing the relation between the classification adopted and the object to be obtained." *Id.* at 632, 116 S.Ct. 1620.

■ Defendants put forth three governmental objectives to justify the disparate treatment of in-state and out-of-state sex offenders:

First is the additional expense of providing a hearing for each out-of-state offender to determine whether he is, in fact, a "sexually violent predator." While Pennsylvania may have a legitimate interest in saving money, it may not achieve this end by discriminating among similarly situated citizens. *See Saenz v. Roe,* 526 U.S. 489, 507, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999).

Second, "the state might not want to become a haven for sex offenders, even though they are not sexually violent predators, by encouraging them to seek the anonymity that they lost in the state where they were convicted." Def. Br. at 24. But the very point of Doe's complaint is that, not being subject to community notification in New Jersey, he has not up to now "lost" "anonymity;" what he seeks, as a corollary of returning to Pennsylvania, is to preserve anonymity unless Pennsylvania demonstrates, by "clear and convincing" evidence, that he is a "sexually violent predator," just as Pennsylvania would have to do in order to subject to community

notification a person convicted of Pennsylvania's equivalent of Doe's offense.[8]

Third, defendants contend that subjecting out-of-state offenders to community notification is necessary to promote public safety because Pennsylvania residents are less likely to have been alerted to the offense "in the daily public discourse or through the media than would be the case for an in-state offender." Def. Br. at 24. In *Lines v. Wargo,* 271 F.Supp.2d 649, (W.D.Pa.2003), the court considered, and rejected, this same argument, stating:

> While it may be the case that a local community has no way of knowing the background of out-of-state sexual offenders, the same is also true for in-state offenders, and in fact, is the basis for Megan's Laws generally. The reason that legislatures are requiring community notification at all is because communities do not know who their new neighbors are despite an ever-present media, and even when the new neighbors were convicted within their own state.... Under Defendant's faulty argument, a community in Philadelphia would know more about a trial of a sex offender in Erie, Pennsylvania, than in Camden, New Jersey. And, this is certainly not the case. There are many reasons why in-state offenders are as unknown to communities as out-of-state ones—the transience of the population, the length of time between a trial and the release from prison of an offender, the sheer size of the population of most cities and towns—and, in fact, these reasons have been offered in support of Megan's Laws in general. But, there is simply no support for Defendant's con-

---

8. Moreover, even as to out-of-state offenders who, unlike Doe, had "lost" "anonymity," it seems unlikely that for a "state [to] not want to become a haven for sex offenders, even

though they are not sexually violent predators," is a constitutionally permissible goal. *See Saenz,* 526 U.S. at 506, 119 S.Ct. 1518.

tention to the contrary, in the record or otherwise, and it must be rejected.

In short, any concern over the public's lack of knowledge about out-of-state offenders applies with equal force to in-state offenders and, therefore, cannot justify Pennsylvania's disparate treatment of the two groups.[9]

Protecting citizens from sex offenses is, without doubt, a legitimate state interest. However, subjecting one group of sex of-fenders to community notification without the same procedural safeguards accorded to other sex offenders, based solely on where the predicate offense was committed, is not rationally related to that goal.[10]

## V.

Accordingly, plaintiff's motion for judgment on the pleadings will be granted and defendants' motion for judgment on the pleadings will be denied.

> Protecting vulnerable individuals from sexual offenses is certainly a legitimate state interest. Requiring registration of convicted sex offenders found to be "repetitive and compulsive," as opposed to other sex offenders or the rest of the population, is rationally related to that goal.... The legislature could have rationally concluded that sex offenders who had completed all incarceration, probation and parole had a good chance of reintegrating into their communities and therefore posed a lower risk. Also, realizing that people who had rejoined society had the most to lose, the legislature could have rationally decided to require only "repetitive and compulsive" offenders in this category to register. Thus, this classification does not offend equal protection. 81 F.3d 1235, 1267–68 (3d. Cir. 1996).

This court agrees that protecting individuals from sex offenses is a legitimate state interest and that policies that distinguish between sexual offenders and other offenders—or even between different classes of sexual offenders based on their offense conduct or continuing danger to the community—are rationally related to that goal. The distinction at issue here, however, turns not on the nature of the offense, but on whether it was committed in Pennsylvania or elsewhere.

9. In further support of the statute, defendants cite a series of cases in which courts have upheld, under rational basis review, parole board policies that discriminate against sexual offenders. *See* Def. Br. at 22. These cases, which involve challenges to policies that treat sex offenders differently than other offenders, are inapposite. In *Gale v. Moore*, for example, the plaintiff alleged that "the State of Missouri had denied him equal protection by creating different standards of parole for sexual offenders than that required of the rest of the prison population." 763 F.2d 341, 342 (8th Cir.1985). The Eighth Circuit ruled that, "The statute's goal of preventing sex crimes through rehabilitation and deterrence apparently constitutes a rational basis and justifies the classification which may have been given thereunder." *Id.* at 344. Similarly, in *Mahfouz v. Lockhart*, that circuit ruled, "The state's decision to distinguish sex offenders as a group from other inmates and exclude them from the work release program is rationally related to the legitimate government purpose of preventing sex crimes and thus does not violate the equal protection clause.". 826 F.2d 791, 794 (8th Cir.1987). *See also Patterson v. Webster*, 760 F.Supp. 150, 153 (E.D.Mo.1991)(denying claim that requiring convicted sex offenders, but not other offenders, to complete a sexual offender program prior to release violated equal protection); *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir.1996) (plaintiffs failed to state an equal protection claim based on the disparate treatment of sex offenders and other offenders). In *Artway v. Attorney General of New Jersey*, the Third Circuit addressed whether New Jersey's Megan's Law, which required "repetitive and compulsive" sex offenders, but not other sex offenders, to register with the state police, violated equal protection. The court stated:

10. Because this court finds that the disparity between in-state and out-of-state offenders codified in Pennsylvania's Megan's Law does not survive rational basis review, it is not necessary to consider whether, as a probationer, Doe retains a fundamental right to travel that would trigger heightened scrutiny. *See Saenz v. Roe*, 526 U.S. 489, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999).

## ORDER

For the reasons set forth in the accompanying opinion, it is hereby ORDERED that plaintiff's motion for judgment on the pleadings is GRANTED and defendants' motion for judgment on the pleadings is DENIED.