129 P.3d 1263

STATE of Idaho, Plaintiff–Respondent,

v.

Thomas C. DICKERSON, Defendant–Appellant.

No. 30367.

Court of Appeals of Idaho.

Feb. 3, 2006.

Molly J. Huskey, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant. Eric D. Fredericksen argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Judge.

This case involves the interpretation and the constitutionality of former Idaho Code § 18–8304, a component of the Sex Offender Registration Notification and Community Right–to–Know Act ("the Act"), as it existed in 2003. Thomas C. Dickerson contends that the charge against him for failure to register as a sex offender was improper because he was not required to register under the provisions of I.C. § 18–8304. Alternatively, he argues that if the statute is interpreted to have imposed a registration requirement upon him, then it violated his constitutional right to travel guaranteed by the Fourteenth Amendment. We hold that I.C. § 18–8304(1)(b) imposed a registration requirement upon Dickerson at the time he was charged but that the statute, as then written, was constitutionally unsound as applied to him.

## I.

### BACKGROUND

In 1990, in the state of Washington, Dickerson was convicted of child rape in the second degree. In 2002, he moved to Idaho

and did not register as a sex offender. In May 2003, Dickerson was charged with failure to register as a sex offender, in violation of the former I.C. §§ 18–8304 and 18–8307. He filed a motion to dismiss the charge, asserting that he was not within the class of persons required to register and that if the Act was interpreted to encompass him, it was unconstitutional in its application to interstate travelers. The district court denied Dickerson's motion. Thereafter, Dickerson entered a conditional guilty plea, reserving the right to appeal the denial of his motion to dismiss.

## II.

## ANALYSIS

### A. Dickerson Was Required to Register as a Sex Offender According to the Terms of Former I.C. § 18–8304(1)(b).

■ At the time of Dickerson's alleged violation, I.C. § 18–8307(1)(a) provided that within ten days of coming into any Idaho county to establish a residence or domicile, an "offender" must register with the sheriff of that county. "Offender" was defined as "an individual convicted of an offense listed and described in section 18–8304, Idaho Code, or a substantially similar offense under the laws of another state or in a federal, tribal or military court or the court of another country." I.C. § 18–8303(8). The then-effective version of Idaho Code § 18–8304 provided, in relevant part:

(1) The provisions of this chapter shall apply to any person who:

1. Because Dickerson was charged with failing to register between June 2002 and February 2003, we apply the form of the statutes in effect at that time. The statutes at issue were significantly amended and reorganized, effective July 1, 2005. 2005 Idaho Session Laws, ch. 233, § 1, pp. 710–14. Idaho Code § 18–8304(1)(b) now reads:

On or after July 1, 1993, has been convicted of any crime, an attempt, a solicitation or a conspiracy to commit a crime in another state, territory, commonwealth, or other jurisdiction of the United States, including tribal courts and military courts, that is substantially equivalent to the offenses listed in subsection (1)(a) of this section and enters the state to establish permanent or temporary residence.

(a) On or after July 1, 1993, is convicted of the crime, or an attempt, a solicitation, or a conspiracy to commit a crime provided for in [various Idaho Code sections defining sex offenses].

(b) Enters the state on or after July 1, 1993, and who has been convicted of any crime, an attempt, a solicitation or a conspiracy to commit a crime in another state, territory, commonwealth, or other jurisdiction of the United States, including tribal courts and military courts, that is substantially equivalent to the offenses listed in subsection (1)(a) of this section.

(c) Pleads guilty to or has been found guilty of a crime covered in this chapter prior to July 1, 1993, and the person, as a result of the offense, is incarcerated in a county jail facility or a penal facility or is under probation or parole supervision, on or after July 1, 1993.

2001 Idaho Sess. Laws, ch. 194, § 2, pp. 660–61.[1] The characteristic of this statute that gives rise to this appeal is the distinction between the time period under subsection (a) for which convictions in the state of Idaho will require registration and the time period under subsection (b) for convictions committed elsewhere by someone who enters the state after July 1, 1993. By the statute's literal terms, under subsection (a) a person convicted of one of the designated offenses in Idaho was required to register only if the offense occurred on or after July 1, 1993, but under subsection (b), anyone who had *ever* been convicted of an equivalent crime in any other jurisdiction had to register if he or she moved to this state on or after July 1, 1993.

The amendment also created a new subsection (c) that adds, as another class of persons required to register, any person who:

Has been convicted of any crime, an attempt, a solicitation or a conspiracy to commit a crime in another state, territory, commonwealth, or other jurisdiction of the United States, including tribal courts and military courts, that is substantially equivalent to the offenses listed in subsection (1)(a) of this section and was required to register as a sex offender in any other state or jurisdiction when he established permanent or temporary residency in Idaho.

The substantive provisions of former I.C. § 18–8307(1)(a) are now codified, as amended, in I.C. § 18–8307(4)(a).

Dickerson was charged under subsection (b) because he moved to the state of Idaho after July 1, 1993, having been convicted of a sex offense in 1990 in the state of Washington. Dickerson argues that as a matter of statutory interpretation, he was not required to register as a sex offender because the same time strictures in subsection (a) that triggered the registration requirement for an Idaho conviction should be deemed incorporated into subsection (b) for foreign convictions. He argues that the language of subsection (b) requiring the offense to be "substantially equivalent to the offenses listed in subsection (1)(a) of this section" incorporated not only the nature of the offense, but also the qualification that the conviction occur "[o]n or after July 1, 1993." [2]

The interpretation of a statute is an issue of law over which this Court exercises free review. *State v. Parker*, 141 Idaho 775, 777, 118 P.3d 107, 109 (2005); *State v. Yager*, 139 Idaho 680, 689, 85 P.3d 656, 665 (2004). If the statutory language is unambiguous, " 'the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction.' " *Garza v. State*, 139 Idaho 533, 536, 82 P.3d 445, 448 (2003) (quoting *Payette River Property Owners Ass'n v. Board of Comm'rs of Valley County*, 132 Idaho 551, 557, 976 P.2d 477, 483 (1999)). The plain meaning of a statute therefore will prevail unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results. *Garza*, 139 Idaho at 536, 82 P.3d at 448. Where the statute is ambiguous, we attempt to ascertain legislative intent, and in construing the statute we may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Kelso & Ir-*

win, *P.A. v. State Ins. Fund*, 134 Idaho 130, 134, 997 P.2d 591, 595 (2000). *See Garza*, 139 Idaho at 535–36, 82 P.3d at 447–48. Courts may not, however, under the guise of judicial construction, rewrite a statute to save it from constitutional infirmity. *See Powers v. Canyon County*, 108 Idaho 967, 972, 703 P.2d 1342, 1347 (1985); *State v. Lindquist*, 99 Idaho 766, 770, 589 P.2d 101, 105 (1979).

Here, we find no ambiguity in the statutory language. Subsection (a) clearly states that if the conviction was for a violation of Idaho law, the registration requirement applies only to convictions occurring on or after July 1, 1993, but subsection (b) contains no such temporal limitation for convictions from another jurisdiction. It is not within our purview to add a temporal limitation to subsection (b) that the legislature did not place there. Rather, we must give effect to the clear legislative expression. If a statute as written is socially or otherwise unsound, the power to correct it is legislative, not judicial. *See State v. Schwartz*, 139 Idaho 360, 362, 79 P.3d 719, 721 (2003). Accordingly, we hold that the Act required Dickerson to register as a sex offender, due to his 1990 conviction in the state of Washington, upon moving to Idaho after July 1, 1993.

### B. Former I.C. § 18–8304(1)(b) Violates the Fourteenth Amendment

Having determined that the former I.C. § 18–8304(1)(b) applied to Dickerson, we must address Dickerson's constitutional challenge to this statute. He contends that the disparity in the statute's treatment of in-state offenders versus those who were convicted elsewhere and subsequently moved to Idaho violated the constitutional right to travel.[3] The constitutionality of a statute is a

---

2. At the outset, we note that our decision on this issue will be of limited precedential value because the 2005 legislative amendment modified subsection (b) to cover only out-of-state convictions that occurred on or after July 1, 1993. *See* note 1, *supra*.

3. The State argues that this constitutional issue was not preserved for appeal. We disagree. On his motion to dismiss the charge, Dickerson's reply brief to the district court argued that by requiring those without out-of-state convictions

who subsequently move to Idaho to register as sex offenders when in-state offenders need not do so, the statute violated state and federal constitutional provisions because it punished people for moving across state lines and improperly favored Idaho residents. After his motion was denied, Dickerson agreed to enter a conditional guilty plea if he could preserve the constitutional issue for appeal. The prosecutor signed the conditional plea and the district court also signed an order approving the reservation of the issue. Under

question of law that we review *de novo.* *State v. Hart,* 135 Idaho 827, 829, 25 P.3d 850, 852 (2001). A party challenging the constitutionality of a statute must overcome a strong presumption of validity. *State v. Cobb,* 132 Idaho 195, 197, 969 P.2d 244, 246 (1998).

The former I.C. § 18–8304(1) created a disparity between sex offenders who moved to Idaho after mid–1993 and offenders who were longer-term residents. A longer term resident with a pre–1993 conviction from Idaho or elsewhere did not have to register, while a person with such a conviction who moved to Idaho after June 1993 was required to do so, no matter how old the conviction. Anomalously, a person who had been convicted before 1993 in a foreign court (including a tribal court or federal court) while residing in Idaho did not have to register if he remained an Idaho resident, but if the individual moved out of state and subsequently returned to live in Idaho after 1993, the duty to register arose. Thus, whether the Act imposed a duty to register upon a sex offender turned upon whether and on what date the individual moved to Idaho.

The United States Supreme Court has long held that the federal constitution guarantees a fundamental right to travel from one state to another. *Saenz v. Roe,* 526 U.S. 489, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *United States v. Guest,* 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966). The Supreme Court has described the right to travel as follows:

> The "right to travel" ... embraces at least three different components. It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travel-

ers who elect to become permanent residents, the right to be treated like other citizens of that State.

*Saenz,* 526 U.S. at 500, 119 S.Ct. at 1525, 143 L.Ed.2d at 702. Dickerson argues that the third component of this right to travel was infringed because when he moved to Idaho, as a new citizen he was treated differently from citizens already domiciled here.

Historically, when evaluating the constitutionality of laws that affect the right to travel, the Supreme Court conducted its analysis under the Equal Protection Clause of the Fourteenth Amendment. *See New York v. Soto–Lopez,* 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) (plurality opinion); *Mem'l Hosp. v. Maricopa County,* 415 U.S. 250, 258, 94 S.Ct. 1076, 1082, 39 L.Ed.2d 306, 314–15 (1974); *Shapiro,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600. In the 1999 *Saenz* decision, however, the Court redirected the constitutional analysis to the Privileges and Immunities Clause. *Saenz* involved a California statute that limited the welfare benefits available to a person who had resided in the state for less than twelve months to the amount that the individual would have received in his or her previous state of domicile. The Court noted that this created a favored class—California citizens who had resided in the state for at least one year and new arrivals who last resided in another state that provided benefits at least as generous as California—and a disfavored class of new arrivals whose previous state provided benefits at a lower level than California, with subclasses at the different benefit levels determined by the law of the state of previous domicile. The Court held that this implicated "the right of the newly arrived citizen to the same privileges and immunities enjoyed by other citizens of the same state," a right protected not by the Equal Protection

---

these circumstances, we conclude that the issue was raised and preserved for appeal.

The State has also argued that in addition to being required to register under subsection (b) of I.C. § 18–8304(1), Dickerson was required to register under subsection (c) because on July 1, 1993 he was on parole for his Washington offense. If Dickerson was properly prosecuted under subsection (c), it would be unnecessary for us to reach his constitutional challenge to subsec-

tion (b). However, in the trial court the prosecution at all times proceeded under subsection (b), and never asserted a violation under subsection (c). Further, the record before us does not unequivocally show whether Dickerson was under parole or probation supervision in July 1993. Therefore, we cannot sustain Dickerson's conviction as an adjudication that fell within the purview of subsection (c).

Clause, but by the Privileges and Immunities Clause of the Fourteenth Amendment. *Saenz,* 526 U.S. at 502, 119 S.Ct. at 1526, 143 L.Ed.2d at 703–04. The Court thereby revived the Privileges and Immunities Clause from nearly 130 years of obscurity. *See id.* at 511, 119 S.Ct. at 1530, 143 L.Ed.2d at 708–09 (Rehnquist, C.J., dissenting).

After determining that the statute implicated the right to travel, the Court stated that to justify the law, the state of California had to demonstrate both a sound policy reason for discrimination against new arrivals and a permissible reason to apply a variety of rules within that class. The Court first held that classifications created by the California statute could not be justified by a purpose to deter welfare applicants from migrating to California. Such a purpose, the Court said, would be "unequivocally impermissible." The Court acknowledged that California had a legitimate fiscal interest in saving money allocated for welfare benefits, but rejected the notion that such a legitimate purpose could be permissibly accomplished by discrimination against newly arrived citizens, noting that the Fourteenth Amendment "does not provide for, and does not allow for, degrees of citizenship based on length of residence." *Id.* at 506, 119 S.Ct. at 1528, 143 L.Ed.2d at 705–06. The Court noted that California could achieve the same goal by reducing all welfare benefits by a few cents per month, and that the subclasses of newly arrived residents, who received different benefits depending on the benefits they had received in their former state, did not have any relevance to their needs for benefits or the state's interest in making an equitable allocation of the funds among its needy citizens. In concluding that the statute was unconstitutional the Court observed that while citizens of the United States have a right to choose to be citizens of any state, the states "do not have any right to select their citizens." *Id.* at 511, 119 S.Ct. at 1530, 143 L.Ed.2d at 708–09.

While the *Saenz* case altered the constitutional underpinnings of the right to travel, it appears to have caused little change in the analyses traditionally employed under the Equal Protection Clause. As in equal protection analysis, the Court first examined whether the law created a classification that burdened the right to travel, and upon finding that it did, then analyzed the sufficiency of the state's justification for the law and considered whether the classification adequately advanced that state interest.

Accordingly, to determine whether the former I.C. § 18–8304(1)(b) was unconstitutional as applied to persons who moved to Idaho after mid–1993, the initial question is whether that subsection creates a classification that burdens the right to travel. The United States Supreme Court has generally found classifications burdensome if they penalize migration or create fixed, permanent distinctions among citizens. Laws that have been found to penalize migration include civil service employment preferences for veterans who resided in the state when they entered military service, *Soto–Lopez,* 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899; requirements for a period of residency before a person can secure a divorce in the state (although a burden, found to be constitutional), *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); one-year residency requirements before indigents become eligible for free non-emergency medical care, *Mem'l Hosp.,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306; durational residency requirements as a prerequisite to register to vote, *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); and durational residency requirements for welfare benefits, *Shapiro,* 394 U.S. at 624, 89 S.Ct. at 1325–26, 22 L.Ed.2d at 609. Laws that create fixed, permanent distinctions between citizens include tax exemptions for Vietnam veterans who resided in the state before a certain date, *Hooper v. Bernalillo,* 472 U.S. 612, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985); and variation in dividend distributions from state oil revenues based upon the number of years of residency, *Zobel v. Williams,* 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982).

In this case, I.C. § 18–8304(1)(b) has elements of both types of classifications. It penalizes persons with pre–1993 convictions who moved to the state after 1993 by requiring registration when it is not required of like offenders who are longer-term residents,

and it creates fixed, permanent distinctions between sex offenders based solely upon the date when they established residency in Idaho. Thus, former I.C. § 18–8304(1)(b) creates a classification that burdens the right to travel.[4]

■ The next question is whether the classifications created by I.C. § 18–8304(1) nevertheless pass constitutional muster. Generally, a law will survive scrutiny if the distinction it makes rationally furthers a legitimate state purpose, although some invidious distinctions are subject to strict scrutiny. *Zobel,* 457 U.S. at 61, 102 S.Ct. at 2313, 72 L.Ed.2d at 678. It is somewhat unclear whether strict scrutiny is appropriate in this case. The Supreme Court invoked strict scrutiny in *Saenz,* but did not indicate whether a less stringent standard might apply outside the facts of that case. Further, when applying an equal protection analysis in previous cases, the Court drew a distinction between laws that penalize migration and those that create fixed distinctions. As to the former, the Court generally applied strict scrutiny, *see, e.g., Soto–Lopez,* 476 U.S. at 904, 106 S.Ct. at 2322–23, 90 L.Ed.2d at 906; *Shapiro,* 394 U.S. at 631, 89 S.Ct. at 1329–30, 22 L.Ed.2d at 613; as to the latter, it declined to say whether strict scrutiny should apply, instead holding that the statutes at issue were not even rationally related to a legitimate state interest. *Hooper,* 472 U.S. at 618, 105 S.Ct. at 2866, 86 L.Ed.2d at 493–94; *Zobel,* 457 U.S. at 60–61, 102 S.Ct. at 2312–13, 72 L.Ed.2d at 677–78. Idaho Code § 18–8304(1) could arguably fall within either category. Because we conclude it cannot pass even the rational basis test, however, we need not decide whether a higher standard applies.

The challenged statute differentiates between classifications based upon the date that the offender entered the state to establish or reestablish a residence. As with the California law at issue in *Saenz,* I.C. § 18–8304(1) creates a disfavored class (those who

have pre–1993 convictions and arrived in Idaho after mid–1993), and a favored class (longer-term residents with pre–1993 convictions). To justify the law, the State must identify a legitimate policy reason to impose the registration burden only upon post–1993 arrivals.

The Supreme Court has stated that the constitutionally protected right to travel does not permit state laws aimed at preventing the ingress of "undesirable" individuals. In *Shapiro,* the Court held:

[T]he purpose of deterring the in-migration of indigents cannot serve as justification for the classification created by the one-year waiting period, since that purpose is constitutionally impermissible. If a law has "no other purpose ... than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it [is] patently unconstitutional." *United States v. Jackson,* 390 U.S. 570, 581, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138 (1968).

*Shapiro,* 394 U.S. at 631, 89 S.Ct. at 1329–30, 22 L.Ed.2d at 613. Similarly in *Saenz,* the Court said:

[O]ur cases have not identified any acceptable reason for qualifying the protection ... for "the 'citizen of State A who ventures into State B' to settle there and establish a home." *Zobel,* 457 U.S. at 74, 102 S.Ct. at 2320, 72 L.Ed.2d at 686–87 (O'Conner, J., concurring in judgment). Permissible justifications for discrimination between residents and nonresidents are simply inapplicable to a nonresident's exercise of the right to move into another State and become a resident of that State.

*Saenz,* 526 U.S. at 502, 119 S.Ct. at 1526, 143 L.Ed.2d at 703–04. Thus, the *Shapiro* and *Saenz* decisions appear to foreclose any argument that excluding or deterring in-migration by persons with sex offense convictions is a constitutionally permissible purpose for a state law. At least two federal courts, following *Saenz,* have observed that disparate

---

4. Although it appears that the United States Supreme Court's line of right to travel cases all involve denial of benefits, we see no principled reason to distinguish the present case on the basis that the challenged statute imposes a burden rather than denying a benefit. The Supreme

Court has said, "[S]ince the right to travel embraces the right to be treated equally in [his or] her State of residence, the discriminatory classification is itself a penalty." *Saenz,* 526 U.S. at 505, 119 S.Ct. at 1527, 143 L.Ed.2d at 705.

treatment of new residents under a state sex offender registration statute cannot be constitutionally justified by a state purpose of discouraging sex offenders from moving into the state. *See Doe v. McVey,* 381 F.Supp.2d 443, 450 n. 8 (E.D.Pa.2005); *Lines v. Wargo,* 271 F.Supp.2d 649, 677–78 (W.D.Pa.2003).

In the present case, the State does not argue a goal of deterring movement of sex offenders into the state, but, instead, asserts that because of the high rate of recidivism by child molesters and the possibility of reoffense in different states many years later, the State has an interest in identifying out-of-state offenders who move to Idaho. To justify the broader registration requirements for sex offenders convicted in other jurisdictions, the State suggests these individuals are more difficult to track because their records are located in other states, and that in an emergency scenario, such as a child abduction, the State has a strong interest in having an easily-accessible local database from which law enforcement officers could identify and locate potential suspects.

Gaining timely access to the names and addresses of residents with foreign sex offense convictions unquestionably is a legitimate state interest. The same can be said, however, of the need for readily available, up-to-date addresses of long-term residents with domestic convictions. Nothing in the record supports the State's premise that long-term residents with pre–1993 convictions are easy for law enforcement authorities to identify and monitor, and we think that premise is highly doubtful.[5]

In addition, the classifications created by the statute are not rationally related to the purpose hypothesized by the State. The Act not only requires registration for pre–1993 foreign convictions, but also differentiates between foreign offenders based on the date they moved into the State. We cannot see how the State's interest in locating persons with foreign convictions is advanced by a law that *excludes* the registration of such individuals if they became Idaho residents before 1993. The State's asserted justification based on the need for a local database of individuals with foreign convictions is further undercut because the statute appears to exclude from registration persons who, while residing in Idaho before 1993, were convicted of sex crimes in the courts of other jurisdictions. Presumably, these long-term Idaho residents whose convictions occurred outside the Idaho court system would be as difficult to identify as sex offenders as new arrivals with foreign convictions would be. The State offers no reason to assume that sex offenders who entered Idaho after 1993 are more dangerous or more difficult to find than the individuals in these other classes. Thus, the purported interest is not being protected by the inequitable classification that the statute creates.

The State's proposed rationale for the disparate treatment of the classifications created by I.C. § 18–8304(1) is also contradicted by subsequent legislative action amending the statute to largely eliminate these distinctions. According to minutes of legislative committee meetings, the amending legislation was presented by the Idaho State Police's Bureau of Criminal Identification, which maintains the central sex offender registry. The amending legislation's statement of purpose states that the amendment was to make updates and "corrections" to the Act. It says that the amendment "addresses an inequity" in that the former I.C. § 18–8304 did not require registration by offenders convicted in Idaho before July 1, 1993 but imposed the registration requirement on those with such convictions from other states who moved to Idaho. Statement of Purpose for 2005 House Bill 97. This legislative history suggests that the discrimination against new arrivals with pre–1993 foreign convictions in

---

**5.** A similar justification for disparate treatment of new residents with foreign convictions under Pennsylvania's sex offender registration statute was rejected in *Lines v. Wargo,* where the court observed:

> There are many reasons why in-state offenders are as unknown to communities as out-of-state ones-the transience of the population, the

length of time between the trial and the release from prison of an offender, the sheer size of the population of most cities and towns—and in fact these reasons have been offered in support of [sex offender registration laws] in general.

*Lines,* 271 F.Supp.2d at 678. *See also McVey,* 381 F.Supp.2d at 450.

the former law was not a purposeful pursuit of *any* state interest or policy but was recognized as an error and possibly an unconstitutional classification.

We conclude that the State's interest in apprehending re-offending sex offenders was not rationally advanced by a classification that differentiated between offenders based solely upon their date of entry into the state. Therefore, we are constrained to hold that the former I.C. § 18–8304(1)(b) created an unconstitutional burden on the right to travel insofar as it imposed a registration duty upon sex offenders with pre-July 1993 convictions who moved into the state during or after July 1993 while imposing no such duty on otherwise similarly situated longer-term residents. Because Dickerson falls within that burdened class, his judgment of conviction cannot stand.

### III.

### CONCLUSION

As a matter of statutory law, Dickerson was required to register as a sex offender under the terms of I.C. § 18–8304(1)(b). Because the statutory provision under which he was convicted was unconstitutional, however, Dickerson's conviction for failure to register must be reversed.[6]

The judgment of conviction entered by the district court is reversed.

Chief Judge PERRY and Judge Pro Tem SCHWARTZMAN concur.

6. Although Dickerson's conviction for violating the Act when he moved to Idaho in 2002 must be reversed, it is possible that he is currently re-quired to register under the present version of the Act. *See* I.C. § 18–8304(1)(c), (d).