NOT DESIGNATED FOR PUBLICATION

No. 113,382

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEWAYNE L. MOSS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed July 15, 2016. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Patrick J. Hurley*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON and SCHROEDER, JJ.

BUSER, J.:  Dewayne L. Moss appeals his convictions of several counts of violating the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 *et seq.* In particular, Moss contends the district court erred when it denied his motion to dismiss the charges because, despite the court's contrary ruling, he does not fall within KORA's definition of a sex offender and was not obligated to comply with the enhanced registration requirements applicable to sex offenders. Alternatively, Moss contends that interpreting KORA in a manner which obligates him to register as a sex offender, rather

1

than a mere offender, renders KORA constitutionally infirm. Finding no error in the district court's ruling, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Following a bench trial held on September 17, 2014, the district court convicted Moss of several violations of KORA. These charges included one count of aggravated failure to register, a level 3 person felony in violation of K.S.A. 2015 Supp. 22-4903(b); two counts of failing to register, level 6 person felonies in violation of K.S.A. 2015 Supp. 22-4903(a); and one count of failure to pay offender-registration fees, a level 9 person felony in violation of K.S.A. 2015 Supp. 22-4903(a). Moss' convictions arose from the following stipulated facts:

> "1. In 1991 [Moss] was convicted of attempted rape in the Circuit Court of Lafeytte [*sic*] County, Missouri, case CR390-30FX.
> "2. In October, 2009, [Moss] was residing in Douglas County, Kansas and has continuously resided in Douglas County, Kansas through the date of the trial.
> "3. [Moss] received notice in October, 2012 that he was required under Kansas Law to register in Kansas as a sex offender and comply with the duties under [KORA].
> "4. [Moss] began registering in Kansas under [KORA] on 10/7/09 and continued to register as required through 12/18/2012. [Moss] registered by reporting to the Douglas County Sheriff's Office and specifically with Al Deathe, or his designee. There, [Moss] completed the Kansas Offender Registration Form and affixed his signature before a witness who was registering [Moss].
> "5. [Moss] did not report to the Douglas County Sheriff's Office to register and did not complete the Kansas Offender Registration Form in March, 2013. From March, 2013 through February 24, 2014, [Moss] did not report to the Douglas County Sheriff's Office to register and he did not complete the Kansas Offender Registration Form.
> "6. From March, 2013 through and including February 24, 2014, [Moss] was not in the custody of a correctional facility and was not receiving inpatient treatment at any treatment facility.

2

"7. [Moss] was required to register as an offender in Douglas County, Kansas.

"8. [Moss] did not remit the payment as required under [KORA] as part of the reporting process at all after his registration form was completed when he reported December 18, 2012. [Moss] never paid this.

"9. [Moss] did not remit the payment as required under [KORA] as part of the reporting process at all after his registration form was completed when he reported May 21, 2014. [Moss] never paid this."

Moss was sentenced on November 3, 2014. The district court granted Moss' motion for a downward dispositional departure and sentenced him to 36 months' probation with an underlying prison term of 102 months. Moss timely appeals.

## DID THE DISTRICT COURT ERR WHEN IT RULED THAT MOSS WAS REQUIRED TO REGISTER AS A SEX OFFENDER UNDER KORA?

Prior to trial, Moss filed a motion to dismiss the charges for lack of probable cause. Moss alleged that while he falls within KORA's definition of an "'[o]ffender"' because of his obligation to register under Missouri law, he does not qualify as a "'[s]ex offender"' in Kansas because KORA defines such offenders as "individuals who are convicted of sexually violent crimes '[o]n or after April 14, 1994[,]'" and his attempted rape conviction occurred in 1991. See K.S.A. 2015 Supp. 22-4902. Moss claimed the State could not establish his guilt for the charged crimes because he complied with the registration requirements applicable to an offender. Alternatively, Moss asserted that subjecting him to the sex offender registration requirements violated his rights under the Privileges or Immunities Clause of the Fourteenth Amendment and Article IV § 2 of the United States Constitution. Moss reasoned that such obligations placed a burden upon him that is "greater than the burden placed on a similarly-situated Kansas resident convicted of attempted rape in Kansas on the same date."

3

The State, on the other hand, contended that Moss qualified as a sex offender under KORA and, thus, he was subject to the registration requirements applicable to such offenders. In particular, the State insisted "[t]here is no classification of 'just plain offender'" in the KORA. Instead, KORA provides registration and reporting requirements for sex offenders, violent offenders, and drug offenders; therefore, individuals who are required to register due to an out-of-state conviction must register under one of these three categories. The State also maintained that although Moss' conviction occurred prior to 1994, he fell within the statutory definition of a sex offender because according to K.S.A. 2015 Supp. 22-4902(b), the term "'[s]ex offender' includes any person who: . . . (7) has been convicted of an offense that is comparable to any crime defined in this subsection, or any out of state conviction for an offense that under the laws of this state would be an offense defined in this subsection." Consequently, the State argued that Moss must register as a sex offender in Kansas because his conviction for attempted rape was a comparable offense in Kansas and this portion of the sex offender definition does not place a "time/date limitation on the out of state conviction."

After considering the parties' briefs in this matter, the district court denied Moss' motion to dismiss, finding that Moss was obligated to register as a sex offender under KORA. The district judge explained:

"I would have to say that I do agree with [Moss' attorney] to this extent:  That if [Moss'] conviction for attempted rape in 1991 had originally occurred in Kansas, he would not be a sex offender for purposes of KORA. However, when you look at KSA 22-4902-B, subsection 4, and I read each of those subsections as being separate and distinct, 4 defines an offender as any person who has been required to register under out-of-state law, and I cannot ignore the fact that Missouri, per their law, as set forth in Doe v. Toelke, . . . does require [Moss] to register in—if he were still in Missouri. So that means he is a person who has been required to register under an out-of-state law. Missouri notified Kansas of their state's requirement for him to register as a sex offender, and we were following their notification. I do think that this pulls in full faith and credit, that we cannot ignore

4

Missouri law or Missouri's authority to still hold him as a sex offender and still require him to register. Anyway, since Missouri notified us of that requirement, that is why we pulled Mr. Moss in and told him to register. His failure to register or follow the registration requirements of 22-4903, that sets out what you have to do in the penalty section, so he is required to register there.

"I did review [Moss'] privileges and immunity's [*sic*] argument, that [he] should not be treated differently than a Kansas resident. However, I believe that Missouri's requirement for Mr. Moss to register has to do with a Federal Sex Offender Registration Notification Act . . . and I believe that the purpose is to prevent sex offenders from moving from the state that requires them to register to a state that would not have required them to register. That the original convicting jurisdiction maintains its hold on those defendants that are required to register no matter where they move. I think that is the intent behind subsection 4 of KSA 22-4902(b). You can't move to another state just to avoid the registration requirements of the state where you were. If that other state required you to register, wherever you move, . . . you have to register under their registration requirements also."

On appeal, Moss contends the district court premised its denial of his motion to dismiss on an erroneous interpretation of KORA.

Our standard of review provides that interpretation of a statute is a question of law over which we exercise unlimited review. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12, *cert. denied* 135 S. Ct. 91 (2014). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. Where there is no ambiguity in the statutory language, the court need not resort to statutory construction; only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature's intent. *State v. Phillips*, 299 Kan. 479, 495, 325 P.3d 1095 (2014).

5

To successfully prosecute Moss for failing to register under KORA, the State was required to prove that he qualifies as an offender, as that term is defined in K.S.A. 2015 Supp. 22-4902, and that his failure to register occurred during the time period he was required to register. See *State v. Fredrick*, 292 Kan. 169, 173, 251 P.3d 48 (2011). KORA requires the registration of offenders and included within the definition of an "'[o]ffender'" are (1) "sex offender[s]," (2) "violent offender[s]," (3) "drug offender[s]," (4) "any person who has been required to register under out of state law or is otherwise required to be registered," and (5) "any person required by court order to register for an offense not otherwise required as provided in [KORA]." See K.S.A. 2015 Supp. 22-4902(a). Offenders must comply with the registration and reporting requirements set forth in K.S.A. 2015 Supp. 22-4905. The duration of an offender's registration requirement depends on the offense of conviction, and offenders, such as Moss, who were convicted of attempted rape in another jurisdiction must register for "the length of time required by the out of state jurisdiction or by [KORA], whichever length of time is longer." See K.S.A. 2014 Supp. 22-4906(d)(1), (d) (12), and (k).

While Moss concedes that he is an offender because he is required to register under out-of-state law, he contends the district court erred when it found he must also comply with the registration requirements applicable to sex offenders. In particular, Moss asserts that KORA encompasses *four* categories of offenders: "'(1) a sex offender; (2) a violent offender; (3) a drug offender'"; and (4) a mere offender, *i.e.*, "'any person who has been required to register under out of state law or is otherwise required to be registered,'" and "any person required by court order to register for an offense not otherwise required as provided in [KORA]." See K.S.A. 2015 Supp. 22-4902(a). As a result, Moss insists he was not obligated to comply with the registration requirements applicable to sex offenders because he does not "meet the definition of a 'sex offender' as [] KORA defines it."

6

For purposes of this appeal, KORA defines sex offender as any person who:

"(1) On or after April 14, 1994, is convicted of any sexually violent crime;

. . . .

"(6) is convicted of an attempt, conspiracy or criminal solicitation, as defined in K.S.A. 21-3301, 21-3302 or 21-3303, prior to their repeal, or K.S.A. 2015 Supp. 21-5301, 21-5302, 21-5303, and amendments thereto, of an offense defined in this subsection; or

"(7) has been convicted of an offense that is comparable to any crime defined in this subsection, or any out of state conviction for an offense that under the laws of this state would be an offense defined in this subsection." K.S.A. 2015 Supp. 22-4902(b).

The term sexually violent crime includes:

"(1) Rape, as defined in K.S.A. 21-3502, prior to its repeal, or K.S.A. 2015 Supp. 21-5503, and amendments thereto;

. . . .

"(15) any conviction or adjudication for an offense that is comparable to a sexually violent crime as defined in this subsection, or any out of state conviction or adjudication for an offense that under the laws of this state would be a sexually violent crime as defined in this subsection;

"(16) an attempt, conspiracy or criminal solicitation, as defined in K.S.A. 21-3301, 21-3302 or 21-3303, prior to their repeal, or K.S.A. 2015 Supp. 21-5301, 21-5302, 21-5303, and amendments thereto, of a sexually violent crime, as defined in this subsection; or

"(17) any act which has been determined beyond a reasonable doubt to have been sexually motivated, unless the court, on the record, finds that the act involved non-forcible sexual conduct, the victim was at least 14 years of age and the offender was not more than four years older than the victim. As used in this paragraph, 'sexually motivated' means that one of the purposes for which the defendant committed the crime was for the purpose of the defendant's sexual gratification." K.S.A. 2015 Supp. 22-4902(c).

7

As it argued in the district court, the State asserts "[t]here is no such category [of] just plain 'offender' in KORA." The State also claims that Moss meets KORA's definition of a sex offender by virtue of K.S.A. 2015 Supp. 22-4902(b)(7), because his Missouri conviction for attempted rape is a comparable offense, which "falls squarely within th[e KORA's] definition of a sexually violent crime."

Moss disputes this interpretation of K.S.A. 2015 Supp. 22-4902(b), however, because according to Moss, even though KORA's definition of a "sexually violent crime" encompasses his attempted rape conviction, the requirement that an offense be comparable incorporates not only the nature of the offense, but also the qualification in K.S.A. 2015 Supp. 22-4902(b)(1) that the conviction for such offense occurred "on or after April 14, 1994."

Although the State's argument regarding KORA's application to three categories of offenders, rather than the four suggested by Moss, appears to comport with the structure of KORA as a whole, it is unnecessary for us to resolve this issue because Moss clearly qualifies as a sex offender under K.S.A. 2015 Supp. 22-4902(b). In fact, reading KORA's definition of sex offender in the manner urged by Moss contravenes basic principles of statutory construction because such an interpretation alters the plain and unambiguous language of the statute. Although the legislature placed a date qualifier upon convictions for sexually violent crimes that occur in Kansas, the legislature opted not to place such a qualification upon comparable out-of-state convictions. Had the legislature wished to exempt offenders who received out-of-state convictions prior to April 14, 1994, from KORA's registration requirements, it could have done so by including a qualification similar to subsection (b)(1) within subsection (b)(7). When a statute is plain and unambiguous, however, an appellate court should refrain from reading something into the statute that is not readily found in its words. *State v. Brooks*, 298 Kan. 672, 685, 317 P.3d 54 (2014).

8

Moreover, when construing statutes to determine legislative intent, appellate courts must consider various provisions of an act in pari materia with a view of reconciling and bringing the provisions into workable harmony whenever possible. *State v. Coman*, 294 Kan. 84, 93, 273 P.3d 701 (2012). As the State asserts, K.S.A. 2015 Supp. 22-4906(k), which defines an offender's duration of registration, further supports this interpretation of K.S.A. 2015 Supp. 22-4902(b). Specifically, K.S.A. 2015 Supp. 22-4906(k) provides:

> "For any person moving to Kansas who has been convicted or adjudicated in an out of state court, or who was required to register under an out of state law, the duration of registration shall be the length of time required by the out of state jurisdiction or by the Kansas offender registration act, whichever length of time is longer. *The provisions of this subsection shall apply to convictions or adjudications prior to June 1, 2006, and to persons who moved to Kansas prior to June l, 2006, and to convictions or adjudications on or after June 1, 2006, and to persons who moved to Kansas on or after June l, 2006*." (Emphasis added.)

K.S.A. 2015 Supp. 22-4906(k) undermines Moss' proposed interpretation of K.S.A. 2015 Supp. 22-4902(b) because if the legislature intended for the time stricture contained within K.S.A. 2015 Supp. 22-4902(b)(1) to be incorporated into K.S.A. 2015 Supp. 22-4902(b)(7), K.S.A. 2015 Supp. 22-4906(k) would need to state "prior to June 1, 2006[, but after April 14, 1994, if the conviction or adjudication was for a sexually violent crime.]"

We also find support for our interpretation of KORA's provisions by reviewing caselaw interpreting Idaho's comparable offender registration statutes. Notably, in *State v. Dickerson*, 142 Idaho 514, 129 P.3d 1263 (Ct. App. 2006), the Idaho Court of Appeals rejected a similar challenge to a former version of Idaho's Sex Offender Registration Notification and Community Right-to-Know Act (SORNCA). Dickerson claimed, in part, that the district court erred when it refused to dismiss a failure to register charge based on

its determination that SORNCA encompassed his 1990 Washington conviction for child rape in the second degree. At the time, SORNCA defined an offender as "'an individual convicted of an offense listed and described in section 18-8304, Idaho Code, or a substantially similar offense under the laws of another state or in a federal, tribal or military court or the court of another country.' [Citation omitted.]" 142 Idaho at 516. The then-effective version of Section 18-8304 of the Idaho Code provided:

> "'(1) The provisions of this chapter shall apply to any person who:
> . . . .
> "'(a) On or after July 1, 1993, is convicted of the crime, or an attempt, a solicitation, or a conspiracy to commit a crime provided for in [various Idaho Code sections defining sex offenses].
> "'(b) Enters the state on or after July 1, 1993, and who has been convicted of any crime, an attempt, a solicitation or a conspiracy to commit a crime in another state, territory, commonwealth, or other jurisdiction of the United States, including tribal courts and military courts, that is substantially equivalent to the offenses listed in subsection (1)(a) of this section.
> "'(c) Pleads guilty to or has been found guilty of a crime covered in this chapter prior to July 1, 1993, and the person, as a result of the offense, is incarcerated in a county jail facility or a penal facility or is under probation or parole supervision, on or after July 1, 1993.' [Citation omitted.]" 142 Idaho at 516.

Dickerson maintained that he was not required to register because the "same time strictures in subsection (a) that triggered the registration requirement for an Idaho conviction should be deemed incorporated into subsection (b) for foreign convictions." 142 Idaho at 517. The Idaho Court of Appeals disagreed:

> "Here, we find no ambiguity in the statutory language. Subsection (a) clearly states that if the conviction was for a violation of Idaho law, the registration requirement applies only to convictions occurring on or after July 1, 1993, but subsection (b) contains no such temporal limitation for convictions from another jurisdiction. It is not within our purview to add a temporal limitation to subsection (b) that the legislature did not place

10

there. Rather, we must give effect to the clear legislative expression. If a statute as written is socially or otherwise unsound, the power to correct it is legislative, not judicial. [Citation omitted.]" 142 Idaho at 517.

Subsequently, in *State v. Yeoman*, 149 Idaho 505, 236 P.3d 1265 (2010), the Idaho Supreme Court addressed a similar argument regarding a later version of Idaho Code § 18-8304, and the court reached the same conclusion the Idaho Court of Appeals reached in *Dickerson*. When *Yeoman* was decided, Idaho Code § 18-8304(1)(c) applied to any individual who:

> "'Has been convicted of any crime, an attempt, a solicitation or a conspiracy to commit a crime in another state, territory, commonwealth, or other jurisdiction of the United States, including tribal courts and military courts, that is substantially equivalent to the offenses listed in subsection (1)(a) of this section and was required to register as a sex offender in any other state or jurisdiction when he established permanent or temporary residency in Idaho.'" 149 Idaho at 506.

Subsection (1)(a) of the statute applied to any individual who committed one of the listed sex offenses "'[o]n or after July 1, 1993.'" 149 Idaho at 506-07. Accordingly, Yeoman contended that his 1984 Washington conviction for rape was not substantially equivalent to "'the offenses listed in subsection (1)(a)'" because his offense did not occur "'[o]n or after July 1, 1993.'" 149 Idaho at 507. The Idaho Supreme Court rejected his argument:

> "When construing Idaho Code § 18-8304 as a whole, subsection (1)(c) is not limited to crimes for which the person was convicted on or after July 1, 1993. Subsection (1)(c) incorporates by reference 'the *offenses* listed in subsection (1)(a) of this section.' (Emphasis added.) Subsection (1)(a) applies to any person who '[o]n or after July 1, 1993, is *convicted* of the crime, or an attempt, a solicitation, or a conspiracy to commit a crime provided for in section . . . . Subsection (1)(c) does not incorporate by reference the *convictions* listed in subsection (1)(a); it incorporates by reference the *offenses* listed. The offenses are listed by reference to their respective code sections. The date of conviction

11

for one of those offenses is not part of the definition of the crime as set forth in the code section. The date a person was convicted of a crime does not become part of the definition of the offense for which he or she was convicted." 149 Idaho at 507.

Similar to the statutory interpretation employed in *Dickerson* and *Yeoman*, we find KORA's plain and unambiguous language resolves Moss' challenge to the district court's interpretation of K.S.A. 2015 Supp. 22-4902(b).

Federal law and the laws of other jurisdictions provide insight into the legislative intent behind KORA's treatment of the various types of offenders. As explained above, KORA includes within its definition of "'offender' . . . any person who has been required to register under out of state law or is otherwise required to be registered." See K.S.A. 2015 Supp. 22-4902(a)(4). Moss does not dispute the fact that he qualifies as an individual who (1) "has been required to register under out of state law," *i.e.*, Missouri's Sex Offender Registration Act (SORA), and (2) is "otherwise required to be registered" by virtue of the Sexual Offenders Registration and Notification Act (SORNA), Title I of the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. § 16901 (2012) *et seq.* See K.S.A. 2015 Supp. 22-4902(a)(4).

SORNA, enacted on July 27, 2006, sought to address "'loopholes and deficiencies'" existent within the "patchwork" of federal and state registration systems by establishing comprehensive minimum national registration-system standards. See 42 U.S.C. § 16901 (2012); *United States v. Kebodeaux*, 570 U.S. ___, ___, 133 S. Ct. 2496, 2505, 186 L. Ed. 2d 540 (2013). SORNA requires sex offenders to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a) (2012). The term sex offender encompasses any "individual who was convicted of a sex offense," which, for purposes of this appeal, is defined as "a criminal offense that has an element

12

involving a sexual act or sexual contact with another" and any attempt or conspiracy to commit such an offense. 42 U.S.C. § 16911(1), (5)(A)(i) and (v) (2012).

The offense of conviction determines the frequency with which an offender must register. 42 U.S.C. § 16911(2)-(4) (2012) (defining sex offender tiers); 42 U.S.C. § 16915(a) (2012) (duration of the registration requirement). While the applicable registration period may be reduced if the offender maintains a clean record for a sufficient number of years, Tier I offenders must register annually for 15 years, Tier II sex offenders must register every 6 months for 25 years, and Tier III sex offenders must register every 3 months for life. See 42 U.S.C. § 16911(2)-(4) (2012); 42 U.S.C. § 16915(a)-(b) (2012); 42 U.S.C. § 16916 (2012) (describing periodic in person verification requirements). Any person who (1) "is required to register under [SORNA]," (2) was convicted of a federal sex offense or "travels in interstate or foreign commerce" and (3) "knowingly fails to register or update a registration as required by [SORNA]" is guilty of a crime punishable by a fine and/or imprisonment for up to 10 years. 18 U.S.C. § 2250(a) (2012).

Importantly, it appears that SORNA's registration requirement applies retroactively to all sex offenders, such as Moss, who were convicted prior to the date the Act went into effect. But see *Carr v. United States*, 560 U.S. 438, 130 S. Ct. 2229, 176 L. Ed. 2d 1152 (2010) (SORNA section, *i.e.*, 18 U.S.C. § 2250[a] [2012]), imposing federal criminal liability for failure to adhere to registration requirements does not apply to sex offenders whose interstate travel occurred before SORNA's effective date). SORNA grants the United States Attorney General the authority to "specify the applicability of [SORNA's] requirements" to such offenders and to "prescribe rules for the[ir] registration." 42 U.S.C. § 16913(d) (2012). See *Reynolds v. United States*, 565 U.S. ___, ___, 132 S. Ct. 975, 978, 181 L. Ed. 2d 935 (2012) (SORNA mandated registration requirements do not apply to "pre-Act offenders until the Attorney General specifies that they do apply.").

13

On February 28, 2007, the United States Attorney General promulgated an Interim Rule which specified that the "requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 72 Fed. Reg. 8894 (2007) (codified at 28 CFR § 72.3 [2015]). Then, 3 months later, the Attorney General published the Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART) Guidelines to "'interpret and implement SORNA,' [citations omitted,]" and these guidelines reiterated "'the interim rule applying SORNA to pre-Act offenders.' [Citation omitted.]" *United States v. Brewer*, 766 F.3d 884, 886 (8th Cir. 2014). See 72 Fed. Reg. 30,210 (2007); 73 Fed. Reg. 38,030 (2008). The Interim Rule was finalized on December 29, 2010, with the issuance of a Final Rule, which went into effect on January 28, 2011. 75 Fed. Reg. 81849 (2010).

Although SORNA, by its plain meaning, imposes an independent duty upon sex offenders to register, the states are not obligated to implement SORNA's terms. See 42 U.S.C. § 16913 (2012); 42 U.S.C. § 16925(d) (2012). Instead, SORNA encourages states to adopt its provisions by making federal funding contingent upon substantial implementation of the Act. 42 U.S.C. § 16925(d) (2012). According to the website for the United States Department of Justice's SMART Office (SMART Office), Kansas is among the 20 states and U.S. territories which, to date, have successfully implemented SORNA. See U.S. Dep't of Justice, SMART Office, http://www.smart.gov/sorna.htm (identifying 17 states and 3 territories as having "substantially implemented" SORNA). In fact, on July 19, 2011, the SMART Office published a "SORNA Substantial Implementation Review" for the State of Kansas, wherein it concluded that Kansas has "substantially implemented SORNA." U.S. Dep't of Justice, SMART Office, SORNA Substantial Implementation Review State of Kansas—(July 19, 2011) http://www.smart.gov/sorna.htm.

Of relevance to this appeal, the Missouri Supreme Court has determined that sex offenders subject to SORNA must register in Missouri irrespective of Missouri law. See

14

*Doe v. Toelke*, 389 S.W.3d 165 (Mo. 2012). In fact, Moss was not required to register as a sex offender under Missouri's SORA, which became effective on January 1, 1995, based solely upon his 1991 conviction because Article I, section 13 of the Missouri Constitution prohibits the enactment of laws that are retrospective in their operation. See 389 S.W.3d at 166-67. Similar to KORA, however, SORA specifically provides that "'[a]ny person who . . . has been or is required to register in another state or has been or is required to register under tribal, federal or military law'" must register in Missouri. See 389 S.W.3d at 167.

While this section appears to violate Missouri's constitutional ban on retroactive legislation, in *Doe v. Keathley*, 290 S.W.3d 719, 720-21 (Mo. 2009), the Missouri Supreme Court determined that SORNA imposes an independent federally mandated registration requirement that "operates irrespective of any allegedly retrospective state law." According to the Missouri Supreme Court: "When . . . the state registration requirement is based on an independent federal registration requirement, article I, section 13 [of the Missouri Constitution] is not implicated because the state registration requirement is not based solely on the fact of a past conviction." *Toelke*, 389 S.W.3d at 167.

On the other hand, Indiana and Maryland have determined, based on 42 U.S.C. § 16925(b) (2012), which provides a remedy for conflicts between SORNA's provisions and a state constitution, that their state constitutions need not yield to SORNA. See *Andrews v. State*, 978 N.E.2d 494 (Ind. App. 2012); *Dep't of Pub. Safety v. Doe*, 439 Md. 201, 94 A.3d 791 (2014). Notably, however, the Missouri Supreme Court rejected the notion that SORNA must yield to the Missouri Constitution's prohibition against retrospective laws due to 42 U.S.C. § 16925(b) (2012). *Roe v. Replogle*, 408 S.W.3d 759, 768-69 (Mo. 2013).

We find that, as in Missouri, Moss must register as a *sex offender* in Kansas and comply with KORA's enhanced registration requirements for such offenders as a matter of federal law and KORA's inclusion of "any person who has been required to register under out of state law or is otherwise required to be registered" within the definition of an offender. See K.S.A. 2015 Supp. 22-4902(a)(4). Unlike Indiana and Maryland, imposing such a requirement on Moss does not violate the Kansas Constitution. The Kansas Constitution contains "no echoing or comparable provision" to the federal Ex Post Facto Clause. *State v. Todd*, 299 Kan. 263, 276, 323 P.3d 829, *cert. denied* 135 S. Ct. 460 (2014). And our Supreme Court recently concluded that the 2011 amendments to KORA's offender registration scheme are nonpunitive and do not violate the federal Ex Post Facto Clause as applied to sex offenders. *State v. Petersen-Beard*, 304 Kan. 192, ___ P.3d ___, 2016 WL 1612851, at *15 (2016).

The legislature's decision not to place a date qualifier upon comparable out-of-state offenses may be a byproduct of its attempt to give full faith and credit to the laws of other jurisdictions and to obtain the federal funding contingent upon implementation of SORNA's registration and reporting regime. In fact, reading K.S.A. 2015 Supp. 22-4902(a) and K.S.A. 2015 Supp. 22-4902(b)(7) in pari materia with a view of reconciling and bringing the provisions into workable harmony demonstrates that the legislature's decision not to place a time stricture upon comparable out-of-state sex offenses was a deliberate choice aimed at ensuring that offenders who are required by federal law and/or the law of another state to register as a *sex offender* register as such in Kansas. Our courts must construe statutes to avoid unreasonable or absurd results, and we presume that the legislature does not intend to enact meaningless legislation. *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014). Moss' interpretation of KORA would yield the incongruous result of classifying him as a mere *offender* when he is obligated to register as a *sex offender* under both federal and Missouri law.

16

We hold the district court did not err when it found that Moss was required to register as a sex offender in Kansas because Moss is a sex offender as provided in KORA's definition of such an offender.

## DOES THE KANSAS OFFENDER REGISTRATION ACT INFRINGE UPON MOSS' CONSTITUTIONALLY PROTECTED RIGHT TO TRAVEL?

As an alternative argument, Moss contends that interpreting K.S.A. 2015 Supp. 22-4902 in a manner which obligates him to register as a sex offender, rather than a mere offender, renders KORA constitutionally infirm because requiring an out-of-state offender to comply with the enhanced registration requirements applicable to sex offenders when a Kansas offender with a conviction predating April 14, 1994, is not obligated to do so violates both the Privileges or Immunities and Equal Protection Clauses of the Fourteenth Amendment.

While the State argues that Moss did not properly preserve his Equal Protection claim because he did not raise this issue in the district court, his argument is, in essence, that KORA infringes upon his right to travel and this contention involves aspects of both the Privileges or Immunities and Equal Protection Clauses. As a result, we will consider the merits.

Citizens enjoy a federal constitutional right to engage in interstate travel, which state law or local regulation may not unreasonably burden. *State v. Cooper*, 48 Kan. App. 2d 671, 675, 301 P.3d 331 (2013). The United States Supreme Court has determined:

"The 'right to travel' . . . embraces at least three different components. [1] It protects the right of a citizen of one State to enter and to leave another State, [2] the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, [3] for those travelers who elect to become permanent

17

residents, the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500, 119 S. Ct. 1518, 143 L. Ed. 2d 689 (1999).

Moss' argument involves the third aspect of the right to travel, *i.e.*, his right as a newly arrived citizen to enjoy the same privileges and immunities as other Kansas citizens.

Once again, precedent from Idaho is helpful to the analysis. As the Idaho Court of Appeals explained in *State v. Dickerson*, 142 Idaho 514, 518-19, 129 P.3d 1263 (Ct. App. 2006):

"Historically, when evaluating the constitutionality of laws that affect the right to travel, the Supreme Court conducted its analysis under the Equal Protection Clause of the Fourteenth Amendment. See *New York v. Soto-Lopez*, 476 U.S. 898, 106 S. Ct. 2317, 90 L. Ed. 2d 899 (1986) (plurality opinion); *Mem'l Hosp. v. Maricopa County*, 415 U.S. 250, 258, 94 S. Ct. 1076, 1082, 39 L. Ed. 2d 306, 314-15 (1974); *Shapiro* [*v. Thompson*], 394 U.S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600 [(1969), *overruled in part on other grounds by Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)]. In the 1999 *Saenz* decision, however, the Court redirected the constitutional analysis to the Privileges and Immunities Clause. . . . The Court thereby revived the Privileges and Immunities Clause from nearly 130 years of obscurity. [Citation omitted.]

. . . .

"While the *Saenz* case altered the constitutional underpinnings of the right to travel, it appears to have caused little change in the analyses traditionally employed under the Equal Protection Clause. As in equal protection analysis, the Court first examined whether the law created a classification that burdened the right to travel, and upon finding that it did, then analyzed the sufficiency of the state's justification for the law and considered whether the classification adequately advanced that state interest."

Despite Moss' contention to the contrary, KORA does not create a classification that burdens the right to travel. "The United States Supreme Court has generally found classifications burdensome if they penalize migration or create fixed, permanent distinctions among citizens." *Dickerson*, 142 Idaho at 519. But KORA does not contain

such a classification because it does not discriminate on the basis of citizenship or the duration of a citizen's residency. Instead, KORA classifies sex offenders based upon the location in which they obtained their conviction. A lifelong Kansas citizen who commits attempted rape in Missouri while temporarily present there must comply with the same registration requirements as Moss regardless of whether his or her conviction occurred prior to 1994.

Moreover, assuming KORA creates a classification that burdens the right to travel, this burden appears to pass constitutional muster. The level of scrutiny we must apply to make this determination, however, remains unclear. In *Saenz*, the United States Supreme Court invoked strict scrutiny to determine the constitutionality of California's welfare regime, but as noted by the Idaho Court of Appeals, the Court did not "indicate whether a less stringent standard might apply outside the facts of that case." *Dickerson*, 142 Idaho at 520. Additionally, in previous cases wherein the United States Supreme Court utilized an equal protection analysis to review this issue, the Court "drew a distinction between laws that penalize migration and those that create fixed distinctions," *i.e.*, the Court applied strict scrutiny with respect to the former and "as to the latter, it declined to say whether strict scrutiny should apply, instead holding that the statutes at issue were not even rationally related to a legitimate state interest." 142 Idaho at 520 (as to the former citing *New York v. Soto-Lopez*, 476 U.S. 898, 904, 106 S. Ct. 2317, 90 L. Ed. 2d 899 [1986]; *Shapiro v. Thompson*, 394 U.S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600 [1969], *overruled in part on other grounds by Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 [1974]; as to the latter citing *Hooper v. Bernalillo County. Assessor*, 472 U.S. 612, 618, 105 S. Ct. 2862, 86 L. Ed. 2d 487 [1985]; *Zobel v. Williams*, 457 U.S. 55, 60-61, 102 S. Ct. 2309, 72 L. Ed. 2d 672 [1982]).

Nevertheless, we find that KORA is constitutional because classifying sex offenders based upon the location of their conviction serves a compelling governmental interest, *i.e.*, it furthers "the legislative purpose of KORA, which is 'to protect the public

19

from sex offenders as a class of criminals who are likely to reoffend.' [Citations omitted]." *State v. Fredrick*, 292 Kan. 169, 173, 251 P.3d 48 (2011). As the State asserts: "It is a reasonable fit for Moss to be required to register . . . in order to provide minimal protection to the community against someone likely to commit another sexually motivated crime—in other words, the degree of [any] discrimination exacted is substantially related to the threatened danger. [Citation omitted.]"

The constitutionality of KORA's focus upon the location of a sex offender's conviction, rather than his or her residency status, is illustrated by the Idaho Supreme Court's decision in *Yeoman*, wherein the court determined that the later version of SORNCA did not place an unconstitutional burden upon the right to travel, and the Idaho Court of Appeals decision in *Dickerson*, wherein the court determined that the former version of SORNCA infringed upon this right because it differentiated between sex offenders based upon the date on which the offender entered the State of Idaho to establish or reestablish a residence. See *State v. Yeoman*, 149 Idaho 505, 507-09, 236 P.3d 1265 (2010); *Dickerson*, 142 Idaho at 517.

In *Dickerson*, the Idaho Court of Appeals addressed whether "the disparity in the statute's treatment of in-state offenders versus those who were convicted elsewhere and subsequently moved to Idaho violated [the third component of Dickerson's] constitutional right to travel." 142 Idaho at 517. According to the Idaho Court of Appeals:

"The former [version of SORNCA] created a disparity between sex offenders who moved to Idaho after mid-1993 and offenders who were longer-term residents. A longer term resident with a pre-1993 conviction from Idaho or elsewhere did not have to register, while a person with such a conviction who moved to Idaho after June 1993 was required to do so, no matter how old the conviction. Anomalously, a person who had been convicted before 1993 in a foreign court (including a tribal court or federal court) while residing in Idaho did not have to register if he remained an Idaho resident, but if the individual moved out of state and subsequently returned to live in Idaho after 1993, the

20

duty to register arose. Thus, whether the Act imposed a duty to register upon a sex offender turned upon whether and on what date the individual moved to Idaho." 142 Idaho at 518.

The Idaho Court of Appeals ultimately found that SORNCA created a classification that penalized migration and created fixed, permanent distinctions between citizens:

"In this case, [SORNCA] has elements of both types of classifications. It penalizes persons with pre-1993 convictions who moved to the state after 1993 by requiring registration when it is not required of like offenders who are longer-term residents, and it creates fixed, permanent distinctions between sex offenders based solely upon the date when they established residency in Idaho. Thus, [SORNCA] creates a classification that burdens the right to travel." 142 Idaho at 519-20.

The court then determined that the classifications created by SORNCA were unconstitutional because "the State's interest in apprehending re-offending sex offenders was not rationally advanced by a classification that differentiated between offenders based solely upon their date of entry into the state." 142 Idaho at 522.

By contrast, however, in *Yeoman*, the Idaho Supreme Court addressed whether the later version of SORNCA, which eliminated the previous classification premised upon date of entry into the state, violated the third aspect of Yeoman's right to travel and his rights under the Equal Protection Clause of the Fourteenth Amendment. In particular, Yeoman complained, in a manner similar to Moss, that SORNCA placed an unconstitutional burden upon his right to travel and treated him differently from similarly situated Idaho sex offenders because "an Idaho resident would not be required to register as a sex offender based upon a conviction for rape in Idaho that occurred prior to July 1, 1993, but he was required to register as a sex offender upon moving to Idaho." 149 Idaho at 508. The Idaho Supreme Court disagreed:

21

"Defendant's claim that he is treated differently from a similarly situated Idaho sex offender is faulty. He was not required to register in Idaho as a sex offender simply because he had a prior conviction for the crime of rape when he moved here. He was required to register because, in addition to the rape conviction, he 'was required to register as a sex offender in [Washington] when he established permanent or temporary residency in Idaho.' Idaho Code § 18–8304(1)(c). Had he not been required to register in Washington, he would not have been required to register once he moved here.

"Because he was required to register while residing in Washington, it is difficult to see how the requirement that he register in this State in any way infringed upon his right to travel to or become a resident of this State. '[M]oving from one jurisdiction to another entails many registration requirements required by law which may cause some inconvenience, but which do not unduly infringe upon anyone's right to travel.' [Citation omitted.]

"Nevertheless, even assuming that the registration requirement of Idaho Code § 18-8304(1)(c) has the effect of imposing a penalty on [Yeoman]'s right to change his residence to Idaho, it will be upheld if it is shown necessary to promote a compelling state interest. *Saenz v. Roe*, 526 U.S. 489, 499, 119 S. Ct. 1518, 1524-25, 143 L. Ed. 2d 689, 701-02 (1999). 'The state has a strong interest in preventing future sexual offenses and alerting local law enforcement and citizens to the whereabouts of those that could reoffend.' [Citation omitted.] This is 'a compelling and strong interest' that 'outweighs any burden imposed.' [Citation omitted.] The requirement that [Yeoman] register as a sex offender upon relocating to Idaho did not violate his right to travel.

"[Yeoman] also contends on appeal that the registration requirement denied him the equal protection of the law. As stated above, he has not pointed to any similarly situated category of sex offenders who are not required to register." 149 Idaho at 508-09.

Unlike *Dickerson* and similar to *Yeoman*, KORA does not discriminate against Kansas citizens based upon the date of their arrival in Kansas. KORA focuses upon the location of the sex offender's conviction and obligates *any* Kansas citizen with an out-of-state conviction that predates April 14, 1994, to register due to his or her obligation to register under SORNA and/or the previous place of residence. This classification clearly advances the State's compelling and strong interest in protecting the public from sex offenders. Kansas cannot insure that those convicted of sex offenses in other states prior

22

to 1994 received sufficient punishment and treatment to ensure their safe reentry into society, as it can with convictions that were addressed by its own penal system.

Moreover, *Dickerson* was decided prior to the enactment of the federal SORNA, and as the district court found, Moss' obligation to register in Kansas is premised upon SORNA, which explicitly encourages the States to draft their registration and reporting regimes in a manner which tracks the *interstate movement* of sex offenders, regardless of the date on which the offender was convicted. While the United States Supreme Court has consistently held that Congress may not authorize the States to violate the Fourteenth Amendment to the United States Constitution, several jurisdictions have considered whether SORNA's registration requirements unreasonably burden the right to travel and determined that SORNA does not implicate this right. See *Saenz*, 526 U.S. at 507-08; see also, *e.g.*, *United States v. Shenandoah*, 595 F.3d 151, 162-63 (3d Cir. 2010) ("[The defendant] may travel interstate, but when he does, must register in the new state, while a convicted sex offender who remains within a state need only remain properly registered therein. There is simply no Constitutional violation. Moreover, moving from one jurisdiction to another entails many registration requirements required by law which may cause some inconvenience, but which do not unduly infringe upon anyone's right to travel. The essential part of the charged crime in this matter is the failure to register; [the defendant's] right to travel is incidental to this obligation, and not constitutionally offended."), *cert. denied* 560 U.S. 974 (2010), *abrogated on other grounds by Reynolds*, 132 S. Ct. 975 (2012); *United States v. Ambert*, 561 F.3d 1202, 1210 (11th Cir. 2009) ("The requirement to update a registration under SORNA is undoubtedly burdensome; however, the government's interest in protecting others from future sexual offenses and preventing sex offenders from subverting the purpose of the statute is sufficiently weighty to overcome the burden. This statute does not violate [the defendant's] right to travel.").

Significantly, SORNA has also survived constitutional challenges involving the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment. See, *e.g.*, *United States v. Juvenile Male*, 670 F.3d 999, 1009-10 (9th Cir. 2012) ("Because defendants in this case have failed to establish membership in a recognized protected class, SORNA is subject to rational basis review for the purpose of equal protection analysis. SORNA's language and legislative history clearly indicate the legislative purpose for which it was enacted. [Citations omitted.] We have held that protecting our communities is a legitimate legislative purpose. [Citation omitted.] The Supreme Court has also held that 'there is no doubt that preventing danger to the community is a legitimate regulatory goal.' [Citation omitted.] Thus, SORNA's requirements satisfy rational basis review and do not violate the Equal Protection Clause."), *cert. denied* 133 S. Ct. 234 (2012); *United States v. Lafferty*, 608 F. Supp. 2d 1131, 1144 (D.S.D. 2009) ("Sex offenders are not a suspect or quasi-suspect class. [Citation omitted.] . . . Nor can it be said that SORNA's registration requirement implicate a fundamental constitutional right. [Citations omitted.] Therefore, the critical question is whether SORNA, and its registration provisions, are rationally related to a legitimate interest. The Court is satisfied that they are."); *United States v. Benevento*, 633 F. Supp. 2d 1170, 1211 (D. Nev. 2009) ("Benevento cites no case for the proposition that sex offenders constitute a suspect or quasi-suspect class. Accordingly, [18 U.S.C. § 2250 which requires sex offenders traveling in interstate commerce to register and update their registration is subject to rational basis review. Section 2250 is rationally related to the legitimate government interest in protecting the public from sex offenders and offenders against children by creating a comprehensive national sex offender registry to track the whereabouts of sex offenders, and prevent sex offenders from circumventing the registration requirements by moving from state to state.").

We conclude that KORA's classification of sex offenders based upon the location of their conviction does not unconstitutionally burden Moss' right to travel or deprive him of equal protection under the law.

24

Affirmed.